IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

## Richmond.

### SHOEMAKER AND ALS. V. CAKE.

#### FEBRUARY 25th, 1887.

*Absent*—LEWIS, P.

1. CONTRACTS OF HAZARD—*Sales in Gross.*—A sale in gross, when applied to the thing sold, means a sale by the tract without regard to quantity, and in that sense is *ex vi termini* a contract of hazard. *Russell* v. *Keeran*, 8 Leigh, 9.

2. FRAUD—*Damage—Right of action.*—Fraud and damage must concur before right of action accrues.

3. IDEM—*Elements of.*—It is an essential element of fraud that the artifices employed to deceive were successful.

4. SALES—*Standing timber—Deficiency—Abatement—Fraud—Case at Bar.*—Tract as "300 or 400 acres" and upwards, as "400 acres" of timber land is advertised for sale. The land was offered at auction, but not sold. Then the timber on the tract was put up, and purchased by C., an experienced lumberman. The quantity was 218¾ acres. But before purchase, C. went on the land and was shown the timber until he expressed himself satisfied. Immediately after purchase he was shown a paper by a competitor showing the tract to contain only 225 acres. After that, he completed the purchase by making cash payment and providing for deferred payments, and got off all the lumber he

chose, (6,000 logs), and sold the residue standing, without paying $1 per log as it was removed, until the whole price ($3,000) was paid, according to the terms of sale. The vendor made no fraudulent representations.

HELD :

1. The sale was in gross and of hazard. No abatement of price should be made. There was no fraud and no damage.
2. Had there been fraud, C. was entitled to no relief, because, after its discovery, he for a long time acquiesced without complaint, and treated the lumber as his own.

Appeal from decree of circuit court of Nansemond county rendered February 21st, 1885, in a cause wherein Nathan Shoemaker, J. J. Kirk, J. L. Shoemaker, and Etros Kirk were plaintiffs, and C. D. Cake was defendant. The latter purchased of former the timber standing on a certain boundary of land for $3,000. Purchaser was to pay $1.00 per log as the lumber was removed until the whole price was paid. He had removed 5,000 or 6,000 logs and was removing another raft of logs without having paid a dollar per log as agreed. The plaintiffs obtained an injunction to stop the removal. Defendant answered and claimed that there were but 218¾ acres instead of 400 acres, as had been fraudulently represented to him by vendors, and that he was entitled to an abatement of the price in the proportion of 400 to 218¾. The decree of the court was in favor of the defendant. And the plaintiffs procured an appeal and *supersedeas* from one of the judges of this court.

Opinion states the case in full.

*White & Garnett* and *C. H. Causey,* for the appellants.

*Thos. Tabb,* for the appellee.

LACY, J., delivered the opinion of the court.

The appellants are the owners of a certain tract of land in the county of Nansemond, which they advertised for

sale in a newspaper, published in the city of Norfolk, December 17, 1880, as 300 or 400 acres of timber land, containing some millions of feet of original growth timber, very low; and afterwards the same was advertised by general auctioneers of Norfolk city in the same newspaper as 400 acres of timbered land, etc. On the second day of February, 1881, the land was offered for sale, at public auction, to the highest bidder, but, there being no satisfactory bid for the land, the same was withdrawn, and the sale discontinued; but, upon suggestions from timber men present as timber buyers, the timber on the said land was offered for sale, and, after a time, there being several bidders, the timber was sold to the appellee at the price of $3,000,—$500 in cash, the residue of the purchase money to be paid in 18 months, the same to be paid at the rate of $1 per log until the whole purchase money had been paid, and the purchaser to have four years to remove the timber from the said land.

The purchaser proceeded, after some delay, to cut the timber, and in June, 1882, the appellants filed their bill to enjoin and restrain the said purchaser from removing a raft of logs before he paid $1 per log for the same, alleging that he had removed another large raft of logs before that time, containing 670 logs, for which he had not paid $1 per log, as agreed. The purchaser answered and set up as defense that *the land from which the timber was cut* did not contain 400 acres, but only 218¾ acres, and that he was therefore entitled to a *pro rata* abatement in the cost of the wood. That is, that the amount he was justly bound to pay bore to the amount he agreed to pay for the timber, to-wit: $3,000, the same proportion that 218¾ bore to 400. The plaintiffs insisted that they had not sold him any land of any quantity, but the timber upon a certain tract of land, within designated boundaries, which were personally shown to him, and distinctly set out in the

written agreement entered into between them at the time of the sale. Evidence was taken in the form of depositions, and the cause was matured and came on for hearing February 21, 1885, when the circuit court sustained the pretension of the defendant, Cake, and held that the representation of the plaintiffs that the land contained 400 acres was the inducement to the purchase of the lumber, and abated the purchase money from $3,000, the agreed price, to $1,640.63, as the purchase price of the wood and timber. Whereupon the plaintiffs appealed.

The circuit court, and the counsel who represented the appellee here, base their insistance upon the principles settled in the courts as the measure of compensation in cases of mistake as to quantity in the sale of lands, when the parties contract for the payment of a gross sum for a tract or parcel of land upon an estimate of a given quantity, which influences the price agreed to be paid, when the proper relief is to set aside the contract, or to give a just compensation, such as will place the parties in the same relative situation in which they would probably have placed themselves if the true state of the facts had been known when they made the agreement, which are set forth in the leading cases of *Blessing* v. *Beatty*, 1 Rob. (Va.) 287, opinion of Baldwin, J., and the cases cited, and also the case of *Yost* v. *Mallicote*, 77 Va. 610. But these principles have no application to a case like this. There is no sale of any quantity of land. The sale is of a lot of timber. There is no estimate of the quantity,—all the timber within certain boundaries is sold. It is more to be likened to a case where the parties by agreement make the estimated quantity conclusive by stipulating to dispense with a survey, and to be governed in all events by the given estimate which makes the sale a sale in gross, a contract of hazard, and necessarily excludes the interposition of a court of equity upon the ground of mistake. A sale in gross, when

applied to the thing sold, means a sale by the tract, without regard to quantity, and in that sense is *ex vi termini* a contract of hazard. *Russell* v. *Keeran*, 8 Leigh, 9.

It is insisted here by the appellee, further, that the contract was procured by the fraud of the plaintiffs in falsely representing the quantity of land within the designated boundaries where the timber was growing. It may be admitted that fraud renders all contracts *voidable ab initio*, both at law and in equity. No man is bound by a bargain into which he has been deceived by fraud, because assent is necessary to a valid contract, and there is no real assent when fraud and deception have been used as instruments to *control the will* and influence the assent. Although fraud has been said to be every kind of artifice employed by one person for the purpose of deceiving another, courts have refrained from any attempt to define with exactness what constitutes a fraud, it being so subtle in its nature, and so protean in its disguises, as to render it almost impossible to give a definition which fraud would not find means to evade. Each case must depend upon its own circumstances. But there are some elements essential to constitute fraud which will presently be considered in their application to the circumstances of this case.

The vendors of this timber advertised the same in a newspaper of wide circulation to attract buyers. The vendee, as well as others, who, like himself, attended the sale, and made bids for the timber, went upon the land where the timber was growing, and was shown through the woods, until he expressed himself satisfied. He was an experienced lumberman, and had for years operated a saw-mill in the town of Hampton. He at the sale demanded to know the quantity of the timber, he having declined to buy the land when that was offered. The auctioneer did not know, and referred him to the vendor then present, who did not know, he said, the quantity of

timber, but experienced lumbermen had estimated 2,000,000 feet to be there. He expressed himself satisfied, and went on to compete for the timber, and, when it was knocked down to him, he was congratulated by his neighbor and fellow lumberman and bidder, who handed him then and there a paper, which contained important facts. This neighbor had been upon the land, had been shown through the timber, and had insisted upon knowing the quantity of land, and the vendor, not knowing, had referred him to a neighbor, and an old county surveyor, who knew all about the land in question. Upon application, this county surveyor had furnished a statement of the quantity of land as 225 acres, and grouped the large trees on the plat and the wood defined as " old field." This paper, containing this detailed statement about this land, was the paper placed in the hands of the purchaser, before he left the auction-house and before he signed the contract. He nevertheless went out to a lawyer's office, and executed the contract of purchase, by which he bound himself to pay $3,000 for this timber, and to pay $500 in cash, and the residue of the entire purchase money within 18 months, and to pay one dollar per log for the timber as it was removed, until $3,000 had been thus paid. He waited a year before he commenced to cut, and carried off the logs without paying for them, and was about to carry off another large raft of them when he was stopped by legal proceedings. There was a consent decree, by which he was allowed to go on to remove the logs upon depositing the money for the timber in bank as it was removed; he stopped cutting altogether, and sold the residue to another person for $600, and then seeks to avoid his contract by paying but little over 50 per cent. of the purchase money, upon the ground, not that he had been injured, or that the consideration had failed, (for he admits that he had cut 5,000 or 6,000 logs off this land before he

sold,) but upon the ground that he was deceived as to the quantity of the land.

There is not only no proof that the quantity of timber fell short of the estimation, but the inference from the testimony is that enough was left on the land by Cake to have equaled the estimation. Cake claimed to be, and was doubtless, acting on his own judgment, and by the advice of counsel. Under the foregoing circumstances, can he pretend to have been deceived by the alleged false representations about the quantity of land? It is an essential element of faud that the artifices used to deceive were successful in that regard. If he did not know the truth about this land, he said he did, and he certainly had the truth placed in his hands and under his eyes at the very instant of time when he had use for it, if at all. It is too clear for argument that when Cake signed this contract he knew perfectly well the quantity of land contained within the designated boundaries, and that he was not deceived by the description "400 acres, more or less." It has been said by a distinguished writer on this subject: "However false and dishonest the artifices or contrivances may be by which one man may attempt to induce another to contract, they do not constitute a fraud if that other knows the truth and sees through the artifices or devices. *Haud enim decipitur qui scit se decipi.* If a contract is made under such circumstances, the inducement or motive for the making it is *ex concessio*, not the false or fraudulent representations, which are not believed, but some other independent motive." Benj. Sales, 338. But what right of action can accrue, although there be fraud, unless there be damage? For, as was said by Croke, J., in *Baily* v. *Merrill*, 3 Bulst. 95, and quoted approvingly by Buller, J., in the leading case of *Pasley* v. *Freeman*, "fraud without damage, or damage without fraud, gives no cause of action." 3 D. & E. 51, and 2 Smith's Lead. Cas. In general, when an article

is offered for sale, and is open to the inspection of the purchaser, the common law does not permit the latter to complain that the defects, if any, of the article are not pointed out to him. The rules are *caveat emptor* and *simplex commendatio non obligat*. The buyer is always anxious to buy as cheaply as he can, and is sufficiently prone to find imaginary fault in order to get a good bargain, and the vendor is equally at liberty to praise his merchandise in order to enhance its value, if he abstain from a fraudulent representation of facts, provided the buyer have a full and fair opportunity of inspecting it.

But, if all which has gone before were otherwise, the case would still be with the appellants upon another principle. It is this: However the buyer may have been imposed upon by the fraud of the vendor, the contract is voidable only, not void; and if, after discovery of the fraud, he acquiesces in the sale by express words, or by any unequivocal act, such as treating the property as his own, his election will be determined, and he cannot afterwards reject the property. Mere delay may have the same effect, if the circumstances of the vendor have changed. *Catlett* v. *Fleming*, 1 Adol. & E. 40; *Clough* v. *London & N. W. Ry. Co.*, L. R. 7 Exch. 26; *Haycraft* v. *Creasy*, 2 East. 92. The party defrauded does not lose his right to rescind because the contract has been partly executed and the parties cannot be fully restored to their former position; but he must do so as soon as circumstances permit, and must not go on with the contract after the discovery of the fraud, so as to increase the injury necessarily to be caused to the fraudulent party. *Masson* v. *Bovet*, 1 Denio, 69. If he rescind on the ground of fraud, he must do so upon discovery of the fraud. *Saratoga R. R.* v. *Row*, 24 Wend. 74; *Selway* v. *Fogg*, 5 Mees. & W. 83.

In this case the appellee, Cake, discovered what he sets up as fraud certainly before he executed the contract, and

Opinion.

probably while on the land, before the sale; for he says that the vendor *kept getting lost* in the *woods*, and bringing him out at the largest timber every time, which at least put him on inquiry. He knew the quantity of land before he paid a dollar or cut a single tree; but he seems to have acted upon some erroneous advice, and to have possessed himself with the idea that the erroneous estimate of the quantity of land had put the vendors entirely at his mercy; so he cut such timber as he wanted, and sold the residue as his own, without notice or consultation with his vendors; and although he cut 5,000 or 6,000 logs, instead of 3,000, he refused to pay for the same, upon the ground that he had been deceived in the quantity of land. It is a just inference from this testimony that he entered into this contract without the intention of complying with it; and one witness states that, when the writ was served on him, he said he knew all the time the quantity of land, but that he had acted under the advice of counsel. This he denies, and so it is not proved; but his whole conduct in the case indicates that he was influenced by some similar consideration. He certainly dealt with his vendor at arm's length, and upon the fullest information. He has availed himself to the last stick of what he bought, and he ought to be made to pay for what he thus bought at the price he agreed to pay. Otherwise he will be allowed to do to his vendor what he so loudly deprecates as to himself,— operate a fraud upon him. He has waived by his conduct in the premises all claim, if any he had, to relief.

It follows that the decree of the circuit court of Nansemond appealed from is wholly erroneous, and must be reversed and annulled.

DECREE REVERSED.