# CHARLESTON.

CORK v. COOK.

| 56 51|
| 59 664|

Submitted June 6, 1904—Decided October 18, 1904.

1. FRAUDULENT CONVEYANCE—*Abatement.*

A deed conveying "all that certain vein or stratum of coal known as the Pittsburg vein of coal, said to be about sixty-five acres, within, upon and underlying that certain tract of land situate," is a sale in gross; and upon its face no abatement from deferred purchase price can be had. Such abatement can be had only by proof that the grantor falsely and fraudulently represented the tract to contain sixty-five acres of coal, and that the granteé relied upon such representation and was by it induced to accept the conveyance. When such false represntation is shown presumably it is relied upon and induces the grantee to accept such deed. If he either knew the representation to be false, or did not rely upon it, but adopted his own means to ascertain quantity, he can get no relief. The burden is on the vendee to show such false representation. (p. 53).

2. FRAUDULENT STATEMENT OF QUANTITY.

A false representation of quantity of land, not relied on by the purchaser, and not operating to induce him to purchase, will give him no relief for deficiency; but when such false representation is proven, presumably it does so operate, unless it otherwise appear. (p. 58).

Appeal from Circuit Court, Harrison County.

Bill by William W. Cork and wife against James F. Cook and John P. Hart. Decree for plaintiffs, and defendants appeal.

*Affirmed.*

A. L. LEHMAN, and U. N. ARNETT, JR., for appellants.

DAVIS & DAVIS, and O. E. SWARTZ, for appellee.

BRANNON, JUDGE:

William W. Cork and wife, by executory contract, sold to James F. Cook "all that certain vein or stratum of coal, known as the Pittsburg vein, now being operated by the parties of the first, underlying a certain tract and parcel of land containing about sixty-five acres, be the same more or less," in Harrison county, in consideration of $25,200. Under this contract a

deed was made two days later by Cork and wife conveying Cook
and John P. Hart the coal in the words, "all that certain vein
or stratum of coal, known as the Pittsburg vein of coal, said
to be about sixty-five acres, within, upon and underlying that
certain tract of land," situate, etc.   The deed reserved a lien
to secure payment of balance of purchase money represented by
a note of Cook and Hart to Cork and wife for $12,500.  Cork and
wife filed a bill in the circuit court of Harrison county to sell
said coal to pay said note, and Cook and Hart filed an answer
setting forth that Cork and wife made to Cook the executory
contract of sale, which was for the common benefit of Cook and
Hart, representing and stating during the negotiation orally,
that the tract contained about seventy acres, certainly not less
than sixty-five acres, of coal, and so continued to represent and
state and assure up to and at the execution of the deed; that in
truth the tract contained, as shown by subsequent survey, only
thirty-eight and sixty-eight one-hundredths acres of coal; that
Cork when making such representation knew that is was false,
and knew that the tract did not contain sixty-five acres, but
only thirty-eight and sixty-eight one hundredths acres of coal, and
made such representation and statement falsely and fraudulent-
ly with set purpose and intent to induce Cook and Hart to make
the purchase; that they, the said Cook and Hart, did not know
the quantity of coal in the tract, but believed Cork's said rep-
resentation and assurance as to its quantity to be true, and re-
lying and confiding in its verity, were induced to make such
purchase and accept said deed, and were thus cheated and de-
frauded by the intentional fraudulent action of said Cork; and
the answer asked that abatement for the deficiency of twenty-
six and thirty-two one hundredths acres of coal be made from
said note.   The answer does not positively aver that the sale
was by the acre, but avers that the sum was or made $387.69 per
acre.   There was a general replication, and also a special reply,
which seems unnecessary, except that it alleged a departure of
the deed from the contract in description of the subject con-
veyed, averring that the plaintiffs objected to it, but the pur-
chasers allayed their objection to the draft of the deed by say-
ing that it would do no harm, as they knew exactly what they
were buying and the number of acres stated was immaterial.
(*Depue* v. *Sargent,* 21 W. Va. 327, point 2).   This matter of

the reply would be proper matter for reformation of the deed; but the reply containing no prayer for such relief, and the decree making no reformation, we decide the case upon the deed. The reply, stating matter provable under general replication, denies all allegations of the answer as to representations of quantity, and avers that it was a sale in gross, not by the acre, and that plaintiffs on the contrary, told the purchasers that they were selling the coal plant then being carried on by the plaintiffs, and not any given number of acres, and that the purchasers so regarded the sale, and did not rely on quantity, and were not induced by any representation of the plaintiffs as to quantity. A decree passed against Cook and Hart for the amount of the note, and for the sale of the coal for its payment, and defendants appeal.

If the case depended on the written contract preliminary to the deed, it would seem to be more clearly for the plaintiffs, because the representation as to quantity in that contract applies to the quantity of the tract of land, not to the quantity of coal in it, whereas, the statement of quantity in the deed refers more to the quantity of coal. It seems clear from the oral evidence that the intention was not to depart from the contract in the drafting of the deed, but that the variance was only the scrivener's. The contract aids this oral evidence, as presumably the contract expressed what the parties designed. As the deed merged the contract, until the deed be reformed by decree, we must go by it.

How stands the case going by the deed? It conveys "all that certain vein or stratum of coal known as the Pittsburg vein of coal said to be about sixty-five acres within" a certain tract. Here is no warranty or assurance of quantity; no absolute or unqualified statement of quantity, but one qualified by the words "said to be about sixty-five acres." It would be difficult to indicate more plainly, in few words, an intent to qualify the statement of quantity, to convey to the mind an understanding that it was not designed to guarantee a given quantity, but only to approximate it. In *Crislip* v. *Cain,* 19 W. Va. 438, 546, it is laid down as law:

"If by a written contract a vendor agrees to sell or by a deed conveys a certain tract of land, stating its boundaries as containing a specified number of acres, more or less, or as contain-

ing about a specified number of acres, or as containing by estimation a certain number of acres, or as containing, it is supposed or it is said, a specified number of acres, or any other mode of designating the quantity, which shows, that the exact quantity was unknown, such a contract is *clearly* a sale in gross without warranty of the quantity; and if there be a deficiency in this estimated number of acres, unless there be fraud on the part of the vendor in the statement, that the number of acres was really estimated to be the quantity named, the vendee is not entitled to any abatement from the purchase-money because of such deficiency; nor would the vendor in such case be entitled to any additional compensation, should it turn out, that there was a surplus over the number of acres named."

"Where a contract or deed is a sale in gross of a tract of land, and the number of acres in the tract stated to be by *estimation* or by *supposition,* or to be between a specified number of acres and another specified number of acres, or in any other manner, as to show, that the vendor does not profess to know the number of acres in the tract, such statements must be regarded as representations of the quantity of the land made by the vendor not upon his own personal knowledge; and in order to establish a fraud by him, so as to make him responsible for a deficiency in the estimated quantity, it must be shown, that the vendee relied on such representations, was thereby induced to purchase at the price, which he paid or agreed to pay, and that the vendor either did not believe his representation to be true, or had no knowledge or information on the subject." (The syllabus points do not exactly correspond with these points).

Under the law thus stated, the deed in this case is a sale in gross, and contains on its face no representation of exact quantity, no warranty of quantity, and from the face of the deed there is no defense of this case. The question, then, is, can the defendants have relief because the plaintiffs practiced actual fraud upon them? Fraud is the defendant's plea, and they bear the burden of proving it by clear preponderance of proof. Note, that this deed is not one conveying a tract containing a specific quantity for a specific sum with the statement that it is at a specific price per acre. If it were, it would be a sale by the acre, and material deficiency would have to be accounted for in any event, without regard to fraud of any cast. Nor is

it a deed conveying a tract stating it to contain a specific number of acres for a specific sum. If it were, it would be a sale in gross, and deficiency would, or would not, have to be accounted for according to circumstances. The statement of the quantity in the deed would, *prima facie,* demand compensation for a deficiency regarded by law as material, because the statement of quantity would be considered as inducing the purchaser to purchase, and would be legal fraud, as the vendor should not state quantity without knowing it. This claim for compensation could be defeated by the vendor showing that the statement of quantity did not influence the purchaser to purchase, the burden of so proving being on the vendor. He could in this case use no previous oral statements or declarations. Note that the case in hand is a deed conveying coal, naming a specified number of acres, at a specified price, but not simply stating quantity, but stating that it is "said to be about sixty-five acres." The statement of quantity is distinctly qualified. The deed itself warns the purchaser that the statement of quantity is qualified; it tells him to look for himself as to quantity. It is a sale in gross. He can get no allowance for deficiency, unless he can show fraudulent intent and conduct of the vendor touching the quantity, misleading him to make the contract.

The burden is on the vendee; but in doing so he can prove any antecedent declarations or action of the vendor to establish his fraudulent intent. But, under general principles touching fraudulent conduct in contracting, if the vendee know the quantity, if he know that the vendor is falsely misrepresenting quantity, he can get no relief, because the fraud of the vendor has not misled him. *Shoemaker* v. *Cake,* 83 Va. 1. Applying these principles to this case: The defendants state under oath that Dorsey Cork repeatedly during the whole negotiation and on the day of the execution of the deed, stated, in various ways, that there was the quantity of sixty-five acres of coal. They do not say that the grantors said so. They were living five miles from Clarksburg, where the transaction took place, and it was negotiated alone by their son, Dorsey W. Cork, they simply executing the deed when presented to them. There is no evidence strongly supporting the version of the defense. W. W. Scott, who acted as Cook's attorney in examination of title and was present the night the deed was made, is very indefinite, and intends us to understand that he

is not certain. His attorney's memorandum docket rather supports the Cork side, because it says that Corks "sold the Pittsburg vein of coal under about sixty-five acres;" that shows the sale of whatever quantity might be in the tract, quantity being a mere description of the tract, not coal. The executory contract so says, and Scott is positive that it was the design in the deed to follow the contract. He says some question arose as to the number of acres, and "as I recall it now, this gentleman, Dorsey W. Cork, held out the impression to Mr. Cook, as I understood it, that there would be 65 acres of coal there; that's my recollection about it; and there was something said about a survey of the coal." He does not say just what Cork said. He gives only the impression produced by Cork upon his mind. He says that it was agreed between them to make concession, and that there might be a deficiency of a few acres, but only a few. "That is all I have to say about it." No other oral evidence supports the defense. Dorsey W. Cork as a witness is flat and emphatic that he made no representation or assurance that there was 65 acres of coal, but stated to Cook that he did not know its quantity, and would warrant no quantity. He states that he objected to the deed because it differed in phrase from the contract, and only agreed to it when the attorneys said it would make no difference, as the deed gave no definite statement of quantity and could not cause trouble, and Cook said it made no difference, "We know what we are getting and it can't hurt you;" that it was late Saturday night, and the deed had to be taken to his father in the country for signature, and under the assurance that it could not cause trouble, he waived the objection. J. Edward Law, an attorney acting for Cork in the preparation of the deed, fully corroborates Cork. He says Cork objected to the deed for variance from the contract in its words touching quantity, in giving quantity as to coal rather than as to the tract, and that it was agreed by all the parties unanimously that the intention of the deed was to convey whatever amount of the coal there was in the Pittsburg vein underlying the tract designated as about 65 acres; that Cork said he did not know how much coal there was and would not pretend to convey any certain number of acres. He states that Cook said he knew what he was getting as to area of coal, that he had had an estimate made by Brady Bros., surveyors,

which information he had, and insisted it was not necessary to change the deed. He said the only statement made by Cork as to quantity was that the surface of the tract contained about 65 acres. Law is not interested, and he is, unlike Scott, clear in memory, and distinct in statement, and counts much in support of Cork's emphatic version; and thus I would say that on the mere oral evidence the defendants fail to sustain the charge of fraud. But other considerations and facts lend strong support to the Cork side. Is it probable that a man selling a particular vein of coal in a tract of 65 acres would guarantee that the coal is in each acre? I think not. And, then, is it plausible for Cook and Hart to say that Cork warranted 65 acres of coal when the deed itself says the reverse? The deed imports that he did not do so, but estimated it. The deed negatives such warranty. And is it not highly unlikely, if Cork intended to give, and Cook and Hart intended to demand, a warranty of quantity, that two lawyers, O'Neill and Scott, present and acting for them, would not inform them that such a deed would not warrant a fixed area of coal because of those words, "said to be about sixty-five acres?" Another fact has struck me as strong to repel the claim that Cork warranted quantity. Both Cook and Hart say that Cork objected to the word "about" in the deed saying it would cause trouble. Why? Because he thought that would be virtually a positive statement of quantity. They say he wanted to substitute the words, "more or less." Why? Because he thought, as most people do, that those words mean, "Let the quantity be what it may." This shows he did not intend a positive statement of quantity. Another consideration is that Cook made the contract. He has been engaged in mining coal thirty years, and for thirteen had been engaged in dealing in coal lands. Strange that, with all this experience, he would not see that a warranty of quantity was put in the deed; stranger still that he would accept a deed the reverse from such warranty.

Three witnesses, Cork, Law and Scott say that the intent was to draw the deed to conform to the antecedent contract. Now, clearly the contract made no warranty of quantity, because it sold the coal "underlying a certain tract or parcel of land containing about sixty-five acres;" the word "containing" applies to its next preceding word "land," stating the land, not the

coal, to contain 65 acres. It simply sold the coal that was in the land.

Again, why did not the defense take O'Neill's deposition? We may infer that he would not support their theory.

In order that Cook and Hart get relief for the fraudulent representation, granting it proven, it must appear that they relied upon the representation and were by it misled and induced to purchase. If it did not mislead, the fraud is without effect and abortive. Point 6, *Crislip* v. *Cain,* 19 W. Va. 438; *Wamsley* v. *Currence,* 25 *Id.* 543; *Shoemaker* v. *Cake,* 83 Va. 1; *Bettman* v. *Harness,* 44 W. Va. 434. "The real inquiry is, not whether the vendor knew the representation to be false, but whether the purchaser believed it to be true and was misled by it into the contract." *Linhart* v. *Foreman,* 77 Va. 540. "The allegation of misrepresentation may be met by proof that the party complaining was well aware and cognizant of the real facts of the case, but the proof of knowledge must be clear and conclusive." Kerr on Fraud, 78. I will not assert that if the complaining party simply have equal means to ascertain, he must make inquiry; for where a representation has been made, especially a known false one, it lies not in the mouth of the maker to say to the other that he should have made inquiry for himself, because he had right to rely on the representation. Kerr 79, 80; *Hull* v. *Field,* 76 Va. 607; *Wilson* v. *Carpenter,* 91 Va. 183. But I say that where the buyer "had knowledge of facts which showed the representation to be untrue, or that he expressly stated in terms, or showed by his conduct, that he did not rely upon the representation, but acted on his own judgment," his plea of misrepresentation is unavailing. *Wilson* v. *Carpenter,* 91 Va. 183. And though he is not bound to make inquiry, yet if he does take steps to inquire, so we can say he did not rely on the representation, but on his own means to find out, his plea is abortive. *Grim* v. *Byrd,* 32 Grat. 293. Now, the evidence shows preponderantly that at the very time of the preparation of the deed Cook stated that he knew what he was getting as to the area of coal. This is confirmed by the fact that after the agreement of purchase, 7th November, Cook directed Brady & Bros., mining engineers in his employ, to make a survey of this coal and give its quantity, and on the 8th November A. Spates Brady did survey it and

ascertained its true quantity, and the result was telephoned to some one at Fairmont that evening, Cook and Hart being there, but Brady is unable to say to whom, and on the 9th November Cook and Hart went from Fairmont to Clarksburg and the deed was prepared the night of that day. Cook says he did not have the benefit of this survey until the next October, and by the contract, and by Cork's refusal to extend time, the transaction had to be closed that Saturday. As to this the evidence conflicts, and we surely cannot say that the circuit court erred in finding that Cook had the result of that survey before the deed was made. Cork swears that Cook told him the night the deed was made that he had had Brady Bros. to make an approximate survey. Law says that Cook said so. Outside their evidence can we say that when Cook, after the making of the written contract, had thought it necessary to direct Bradys to survey the coal, and saying to them that unless it was done by Saturday night he did not care if it was never done, that he would change his mind, waive the result of the survey, and take the deed regardless of it? He wanted it by Saturday night, because the deal was then to be closed by deed.

We know that the result of the survey was telephoned to Fairmont the night before. Was it to a stranger? And Cook and Hart admit that they were at Brady's office that evening, and got a plat of another survey of a little piece of surface bought of Cork out of the tract, which went into the deed. Are we to think they would fail to make inquiry at that office, if they had not already the information of the survey? Highly improbable. In addition, Cook had twice before made personal inspection of this tract of coal in company with C. A. Horner, who very shortly before was trying, as agent of Cork, to sell this coal, and, as Cork says, Cook told him that that inspection gave him knowledge of the quantity of coal that was satisfactory to him. In addition, he admits that Horner told him that the tract contained but forty acres of coal, and if he bought it for more, he would be fooled. Cook appeals to a letter to him from Horner as showing just what Horner said, and contends that it does not say this; but in the letter on file Horner states that the tract was "estimated to be sixty acres coal." This is no positive statement, but a warning. But he admits that Horner told him on the 7th November that the tract had only forty

acres of coal. Here was warning from one who had been agent for Cork, and likely to know. Cook asked extension of payment of the note. It was refused. Then for the first time, a year after the deed, he demanded abatement from the note, having in the meantime taken possession and mined coal. This was late to inform Cork of the deficiency. *Shoemaker* v. *Cake,* 83 Va. 1.

We conclude that the defense fails to establish false or fraudulent representation; and hence it is needless to say, but we do say, that if there were such representation, defendants did not rely upon it, were not induced to contract thereby, but acted on information of their own and on their own knowledge. This coal was very valuable, as the tract came down to the railroad, was an established coal plant with side track and tipple, and was the key to valuable coal land behind it, cut off from the railroad, which land Cook intended to buy, and he wished this tract, was eager to buy it and took the risk, or knew the quantity.

We must affirm the decree.

*Affirmed.*