**Salem**

## ROBERT L. NORMAN

v.

## COMMONWEALTH OF VIRGINIA

No. 0766-85

Decided July 15, 1986

COUNSEL

William E. Bobbitt, Jr., for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, J.**—Robert L. Norman was convicted in the Circuit Court of Augusta County on a charge of failure to perform promised construction in return for advances of money. He seeks reversal upon the grounds that the evidence was insufficient to prove that he intended to defraud when he received the advances and for the further reason that he offered to substantially make good such advances. We disagree and affirm.

Code § 18.2-200.1 states:

If any person obtain from another an advance of money, merchandise or other thing, of value, *with fraudulent intent,* upon a promise to perform construction, removal, repair or improvement of any building or structure permanently annexed to real property, and fail or refuse to perform such promise, *and also fail to substantially make good such advance,* he shall be deemed guilty of the larceny of such money, merchandise, or other thing.

(emphasis added).

Defendant admits that he obtained the advance of money, made a promise to perform construction, and failed to perform.

█ To determine whether or not there was fraudulent intent we look to the conduct and representations of the defendant. *Cunningham* v. *Commonwealth*, 219 Va. 399, 402, 247 S.E.2d 683,

684 (1978); *Riegert* v. *Commonwealth*, 218 Va. 511, 518-19, 237 S.E.2d 803, 808 (1977). Whether fraud actually existed will depend upon the circumstances of each case. *Shoemaker* v. *Cake*, 83 Va. 1, 5, 1 S.E. 387, 389 (1887).

Where the sufficiency of the evidence is challenged on appeal, that evidence must be construed in the light most favorable to the Commonwealth, giving it all reasonable inferences fairly deducible therefrom. *Higginbotham* v. *Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975); *see* Code § 8.01-680. In so doing we must "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Parks* v. *Commonwealth*, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting *Wright* v. *Commonwealth*, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954)), *cert. denied*, 450 U.S. 1029 (1981).

Norman was president of Dey, Inc., which was developing into a time sharing resort property known as Ingleside. Roy G. BeMent, a resident of Sarasota, Florida, invested $40,000 with Norman for two shares in Dey, Inc. BeMent had trouble securing information from Norman concerning the progress of the development. Finally, on an inspection trip, he learned from Norman that the Ingleside deal had "gone sour." However, Norman assured BeMent that his $40,000 investment would be "rolled over" into the Lake Rhema campground time sharing project. On October 4, 1982, Norman and BeMent entered into an agreement whereby BeMent would pay an additional $20,000 for which BeMent would be entitled to rent Lots 6 and 12 for 99 years, with cabins to be built by Norman on those lots by March 1, 1983. The price of each lot was $30,000, a total of $60,000, $40,000 of which being the original sum paid by BeMent plus $20,000 more he was to pay. To persuade BeMent into accepting the offer and paying the additional $20,000, Norman gave BeMent a personal tour of the site and repeatedly assured BeMent that he had bought and stored in a warehouse all the equipment and furnishings needed for twenty cabins. The agreement signed on October 4, 1982, specifically stated that the rental fee of $30,000 per lot was to be placed in an escrow account at the Bank of Rockbridge. It further provided that the escrow funds would be paid in increments by the escrow agent, the bank, to Norman only upon: (1)

delivery of a properly executed lease; and (2) satisfaction that the log cabin had been completed. Norman even went so far as to drive past and point out to BeMent the bank which was to hold the money in escrow. At that time Norman assured BeMent that the money would be held in escrow.

In subsequent months, BeMent repeatedly called Norman to ask about the construction's progress. He was advised by Norman that rain and mud had impeded the intended work. Finally, in October, 1983, BeMent made an unannounced trip to Lake Rhema and found that no construction had been performed on his lots. No cabins were thereafter built on the lots and BeMent was not repaid any part of his investment.

Norman never submitted an application for building permits or requested a zoning change that would have been necessary to build on the lots. In fact, there were only two cabins on the Lake Rhema property and they existed prior to the development plans and had been remodeled by Norman. Norman made two false statements to BeMent before BeMent paid the remaining $20,000. First, Norman never established an escrow account and he admitted that he never intended to put the money into escrow. Secondly, Norman did not have a warehouse containing equipment and furnishings for twenty cabins. At trial, Norman testified that he deposited the money into his own account and used the $20,000 to buy and cut logs for the Rhema cabins. However, he later admitted that he spent the money for personal living expenses.

Thus the jury could have inferred that Norman knowingly and intentionally made material misstatements of facts and did nothing in furtherance of fulfilling his promise to build. The fact that Norman appropriated the proceeds of the $20,000 check to his own personal use shortly after receiving it was additional evidence of intent to defraud. *See Orr* v. *Commonwealth*, 229 Va. 298, 301, 329 S.E.2d 30, 32 (1985). Norman's failure to contact BeMent when he realized that he would be financially unable to perform the construction was an additional circumstance upon which the jury could have relied. Considering all of the evidence, including the statements before and contemporaneous with the agreement, and the actions of Norman thereafter, the jury could have inferred that he obtained the advance money with fraudulent intent.

■ Norman also claimed that he substantially made good the advance which he received from BeMent. However, Norman only offered to repay the money by giving BeMent "$500 down with interest and picking up the $20,000 payments as . . . [they] go down the line." Norman said that he also offered to give BeMent two cabins that were already finished (the two that had been remodeled) and that he offered to pay BeMent $500 a month and within one year pay out the $60,000. BeMent denied that he was offered the two cabins. Norman eventually filed for bankruptcy and never repaid the money. Even if he had offered to repay the advance, a promise to do something in the future is not the equivalent of "substantially mak[ing] good such advance."

Therefore, the judgment is affirmed.

*Affirmed.*

Koontz, C.J., and Coleman, J., concurred.