**Richmond**

DAVID L. RADER

v.

COMMONWEALTH OF VIRGINIA

No. 0981-91-2

Decided November 10, 1992

COUNSEL

Frank A. Porter (Stephen L. Bryant, on brief), for appellant.

Margaret Ann B. Walker, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—David Rader was tried without a jury and convicted of construction fraud in violation of Code § 18.2-200.1. Rader appeals on the grounds that the evidence was insufficient to support the conviction and that the trial court erroneously admitted evidence of building code violations. We find these arguments to be without merit. Therefore, we affirm the conviction.

On August 14, 1989, Rader entered into a residential renovation contract with Stephen and Dianne Arritt, agreeing to build a deck, enlarge a bathroom, renovate a utility area, add a Florida room, and build a bedroom. The contract specified that the work was to be completed within ninety days. The contract also required Rader to carry a $300,000 insurance policy during the construction period and to "abide by all Federal, State, and Local codes and restrictions." After negotiating an arrangement with the insurance company whereby Rader paid only a partial down payment of the premium, he acquired the requisite insurance policy.

Pursuant to the contract, Rader was advanced $3,125 on the first day of the job before any work was begun. The second payment or draw of $6,500 was to be made when the footers were poured and

blocked and the brick work for the two additions was started. On August 26, 1989, when one brick had been laid, the homeowners paid Rader the second draw of $6,500.

The contract called for the third draw or payment of $10,000 to be made when the framing was done in the Florida room and bedroom and when the roof was on both rooms. As of September 15, the roof was not completed; none of the flashing had been done, and there was no overhang adequate to pass inspection. Despite those deficiencies, Rader met with the homeowner and requested the third draw. The homeowner was reluctant to pay Rader because he had not completed the roof. In response to Mrs. Arritt's concern about paying the third draw before the roof was completed, Rader assured her that the roof would be finished "that day." Mrs. Arritt testified that Rader made an additional representation:

> I gave [the payment] to him because he informed me that it was very necessary to order my windows and doors immediately. He needed that money immediately because he had to go make the order, and since they were special order, it would take a couple of weeks for them to come in.
>
> If he did not have the money for the windows and doors, I would be very much delayed . . . and I was trying to avoid any delay.

Based upon Rader's promises, the Arritts paid Rader.[1] Rader never completed the roof and never ordered the windows.[2]

On October 18, 1989, the homeowner discovered that Rader's $300,000 insurance policy was to be canceled due to delinquent premium payments. Mrs. Arritt contacted Rader and asked him to come to her home, which he did. At that time, Rader again assured her that the windows were ordered and that "he would take care of [the insurance]." Rader performed no additional work.[3]

Thereafter, the homeowners made numerous unsuccessful attempts to contact Rader. At one point, Rader promised to complete the job,

---

[1] Pursuant to the terms of the contract, Rader was actually paid $9,600, which represented a $400 shower allowance to be paid by the homeowner.

[2] The homeowner had never selected the type of doors to be purchased.

[3] Minimal work (approximately one hour and fifteen minutes) was performed at the residence following the $9,600 advance to Rader; the record reflects, however, that this work was not performed by Rader.

but he never returned to work. On November 13, 1989, the homeowners sent a letter to Rader by certified mail demanding that $15,000 of the total money paid be refunded. Rader received the letter but did not respond. The homeowners also discovered later that Rader had violated at least three building code provisions in his construction work at their home.[4] Rader maintains that this evidence was insufficient to show that he received an "advance," that he received the money with fraudulent intent, or that he failed substantially to make good on the advance.

Code § 18.2-200.1 provides that a person is guilty of larceny if he obtains an advance of money or other thing of value with fraudulent intent upon a promise to perform construction and fails to perform that promise.[5] Where the sufficiency of the evidence is challenged on appeal, the Court must consider all evidence in the light most favorable to the Commonwealth and grant to that evidence all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975); *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). "In so doing [the Court] must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Norman v. Commonwealth*, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986). A trial court's judgment will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. Code[nb] § 8.01-680; *Stockton v. Commonwealth*, 227 Va. 124, 145-46, 314 S.E.2d 371, 381, *cert. denied*, 469 U.S. 873 (1984); *Evans v. Commonwealth*, 215 Va. 609, 612-13, 212 S.E.2d 268, 271 (1975). We hold that the evidence was sufficient to prove beyond a reasonable doubt that Rader received an "advance," that he procured it with a fraudulent promise, and that he failed substantially to make good on that promise.

The evidence shows that the $9,600 payment was, in fact, an advance. Without question, the first payment of $3,125 was an advance

---

[4] Those violations included an incomplete sewage ventilation pipe, an incomplete roof and inadequate crawl space.

[5] Code § 18.2-200.1 provides:

"If any person obtain from another an advance of money, merchandise or other thing, of value, with fraudulent intent, upon a promise to perform construction, removal, repair or improvement of any building or structure permanently annexed to real property . . . and fail or refuse to perform such promise, and also fail to substantially make good such advance, he shall be deemed guilty of the larceny of such money, merchandise or other thing."

because it was paid before Rader began any work. With respect to the second payment of $6,500, which was due once the footers were poured and brick work started, it is not clear from the contract whether it was a payment for the value of work completed through that stage of construction, or whether it was, in part, an advance for work to be performed. The fact that a payment is due at a specified stage in the project does not, without more, prove whether it is payment for work completed or an advance or draw for work to be done. Thus, the second payment may have been an advance, or payment for work completed at that point, or a combination thereof. The same uncertainty does not exist with respect to the $9,600 payment that is at issue.

The homeowner testified without contradiction that the roof had not been completed when Rader asked for the $9,600 payment. The homeowner knew the roof had not been completed and "was concerned about giving [Rader] the money in advance." In order to get the money that day, Rader "assured [the homeowner] that the roof would be finished that day." Although the homeowner paid Rader upon that representation, Rader did not complete the roof. The flashings were not installed and the roof did not have an overhang. This evidence proved that Rader was paid for work that he was contractually obligated to complete and did not complete. Indeed, Rader's statement to the homeowner that he would finish the roof that same day is evidence that he acknowledged that the payment was not fully earned. He himself considered the payment as an advance. The money was paid before schedule only because the roof was not complete and, thus, the payment qualified, in part, as an "advance."[6]

■ The evidence also was sufficient to prove beyond a reasonable doubt that Rader procured the advance with the fraudulent intent not to complete the project. To determine whether fraudulent intent exists, the Court must "look to the conduct and representations of the defendant." *Norman*, 2 Va. App. at 519, 346 S.E.2d at 45. "Whether fraud actually existed will depend upon the circumstances of each case." *Id.* at 520, 346 S.E.2d at 45. The time for determining fraudulent intent is the time at which the defendant procured the advance, not, as Rader suggests, at the time the parties entered into the contract. Code § 18.2-200.1; *Klink v. Commonwealth*, 12 Va. App. 815, 819, 407 S.E.2d 5, 7

---

[6] The third payment to Rader was scheduled to be made "when framing is done in Florida Room and Bedroom and roof is on both." Rader argues on appeal that the term "roof is on" does not mean roof is complete. However, the record contains no evidence that the term used in the contract has a usual and customary meaning in the construction trade.

(1991). The use of false statements to induce someone to enter into a contract can be persuasive evidence of fraudulent intent, *id.*, but the absence of such fraudulent inducement does not preclude a finding that the defendant later obtained an advance with fraudulent intent.

In this case, Rader's representations and conduct, taken together, demonstrate fraudulent intent. First, Rader requested the $9,600 upon the promise of completing the roof and for the specific purpose of ordering windows and doors for the new extension. Rader never ordered the windows or doors. In fact, he did not apply any of the $9,600 toward further work on the home. This conduct was a factor from which the fact finder could have inferred fraudulent intent in construction fraud.

Second, Rader falsely told the homeowner that he would order the windows with the $9,600 payment. A defendant's use of false statements is a significant factor that tends to prove fraudulent intent in construction fraud. *See Norman*, 2 Va. App. at 521, 346 S.E.2d at 46 (fraudulent intent found where defendant falsely stated that he had put the advance into escrow and had purchased materials for construction); *compare Klink*, 12 Va. App. at 819, 407 S.E.2d at 8, and *Boothe v. Commonwealth*, 4 Va. App. 484, 491, 358 S.E.2d 740, 744 (1987) (no fraudulent intent found where no false statements were made).

Third, Rader did not apply for a building permit for the deck at the time he applied for the other permits. *See Norman*, 2 Va. App. at 521, 346 S.E.2d at 46 (fraudulent intent found where defendant did not apply for building permits or request zoning changes). Although Rader could have applied legally for the permit at a future time before he began construction on the deck, the evidence showed that it would have been customary for him to apply for all the permits at the same time. When viewed in light of the fact that Rader never began construction on the deck, the failure to apply for a permit gives rise to an inference that Rader never intended to build the deck or complete the project with the money advanced to him.

Finally, Rader's general lack of communication with the homeowners about the problems with the project is further evidence that he did not intend to complete the contract. *See Norman*, 2 Va. App. at 521, 346 S.E.2d at 46 (defendant did not attempt to contact the client to tell him that financial problems prevented him from fulfilling the contract); *compare Klink*, 12 Va. App. at 817-18, 407 S.E.2d at 6-7, and *Boothe*, 4 Va. App. at 486, 491, 358 S.E.2d at 744-45 (no fraudulent

intent found where defendants remained in constant contact with clients, giving them reasons for delay and assurances that the project would be completed). Once Rader received the $9,600 payment, the homeowners had increasing difficulty in contacting Rader. Whenever they could speak with him, he continued to be evasive about the reasons for the stoppage of the project. In the end, Rader never responded to the certified letter demanding a refund of the money paid to him.

 Rader also argues that the trial court erred in admitting evidence that he violated three building code provisions. He asserts that it only proves the quality of workmanship and is irrelevant on the issue of fraudulent intent. We do not agree. "Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant." *Cash v. Commonwealth*, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988) (citations omitted). "The test establishing relevancy is not whether the proposed evidence conclusively proves a fact, but whether it has any tendency to establish a fact in issue." *Wise v. Commonwealth*, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988). Admissibility of evidence is an issue left to the discretion of the trial court, and unless the appellant proves an abuse of discretion, no error will lie. *Avocet Dev. Corp. v. McLean Bank*, 234 Va. 658, 667, 364 S.E.2d 757, 762 (1988); *Barber v. Commonwealth*, 206 Va. 241, 252, 142 S.E.2d 484, 493 (1965).

Evidence of the building code violations by Rader was relevant and probative because it tended to show his state of mind in performing the contract and his intent to defraud. To the extent that the building codes set an industry-wide minimum standard of quality and workmanship, a violation of the code would be relevant in establishing an intent to provide work of lesser value and quality than warranted by a promise in the contract to abide by all federal, state and local codes and restrictions. While the violations themselves may not prove intent to defraud, they were a circumstance that the fact finder could consider, along with Rader's other conduct and false representations, to prove his intent. The trial court did not abuse its discretion by admitting such evidence.

Finally, Rader claims that, even if the $9,600 payment was an advance obtained with fraudulent intent, the Commonwealth did not prove that he failed to "substantially make good" on the advance. This argument is without merit. The record shows that once Rader received the $9,600, he failed to finish the roof. In fact, Rader never returned to complete the construction project and did not reimburse

the $9,600 advance or attempt to respond to the Arritts' letter demanding the repayment.

We do not agree with Rader's argument that the fact that he performed a significant amount of work on the project before receiving the $9,600 payment precludes a finding that he did not substantially make good on the advance. It is apparent from reason and common sense that construction fraud can occur despite the fact that a builder or contractor begins to perform on the contract. On the other hand, this Court found no fraud in the *Klink* case, even though the defendant had done none of the contracted work, except place an order for one door. The relevant question is whether a builder or contractor obtained an advance based upon future work promised with a fraudulent intent not to perform or to perform only partially, not whether the contractor had performed work for which he was paid.

For the foregoing reasons, we conclude that sufficient evidence proved that Rader obtained an advance with fraudulent intent and failed to make good on the advance. We also conclude that the trial court did not err in admitting evidence of Rader's building code violations to prove fraudulent intent. We therefore affirm the trial court's judgment.

*Affirmed.*

Benton, J., and Fitzpatrick, J., concurred.