COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Willis and Bumgardner
Argued at Salem, Virginia


JOHN KURT SENSABAUGH

MEMORANDUM OPINION[*] BY
v.     Record No. 2811-97-3     CHIEF JUDGE JOHANNA L. FITZPATRICK
                                FEBRUARY 9, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NELSON COUNTY
J. Michael Gamble, Judge

Bruce K. Tyler for appellant.

Richard B. Campbell, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


John Kurt Sensabaugh (appellant) was convicted in a bench
trial of failing to carry out a promise to perform construction
in return for an advance of money in violation of Code
§ 18.2-200.1.  Appellant contends the language used in the notice
did not comply with the statute and, therefore, the Commonwealth
failed to prove an essential element of the crime.  Additionally,
he argues that the evidence was insufficient to support the
conviction.  Finding no error, we affirm.

I.

Under familiar principles of appellate review, we examine
the evidence in the light most favorable to the Commonwealth,
granting to it all reasonable inferences fairly deducible
therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493

[*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

S.E.2d 677, 678 (1997). So viewed, the evidence established that appellant entered into a written contract with David Copson (Copson) to construct a building. The contract estimated a starting date of January 16, 1995, and a completion date of February 28, 1995, and required Copson to make four payments as follows:

> Upon signing contract, a deposit of $4,800.00 is to be made. The deposit covers rough-in plumbing, stone, concrete, and excavating. A second draw of $9,930.00 is to be made for all rough framing, roofing, windows, shingles, interior rough-in plumbing and electrical (Material to be delivered within 48 hours of second draw). A third draw of $7,900 is to be made for all finish work. The balance upon completion and payable upon completion is $5,332.00.

When the contract was first negotiated, appellant "told" Copson to get the building permit. Copson filed for a permit on January 9, 1995, and paid appellant the first advance on January 16, 1995, when the contract was signed. The building permit could not be issued until appellant provided proof of a properly secured contractor's license, which did not occur until April 25, 1995, almost two months after the building was supposed to be completed.

On April 6, 1995, Copson paid the second draw of $9,930. In late May of 1995, even though the work required under the second draw/advance was incomplete, appellant requested payment of the third draw. Copson testified as follows:

> Mr. Sensabaugh told me it was time for the third draw. I was unwilling to make the payment all at once because the work had gone

so slowly, so I wanted to stretch it out a
little bit, so I gave him partial payment.

As a result, Copson wrote three checks to appellant: one for $3,500 on May 22, 1995; one for $2,600 on May 30, 1995; and one for $1,800 on June 2, 1995.[1]

"[W]ithin a week or so" of Copson paying the balance of the third draw, appellant's workers "packed up all . . . their tools and left the job." At that point, "there was still some electrical work to be done, there was the sewer connections to be made," as well as insulation, sheetrock, and finished plumbing. Moreover, "the framings weren't even done for" the skylights that were supposed to be installed in the roof. Although the toilet bowl had been delivered, the sinks and heat pump had not. Appellant also failed to deliver the skylights, electrical lighting, sheetrock, gutters, linoleum flooring, interior window frames, and insulation.

Copson attempted to contact appellant to determine when appellant and his workers were going to return to the job site to

_____

[1]On May 25, 1995, three days after Copson paid appellant the first installment on the third draw, the parties prepared and executed a document entitled, "Extras." In it, the parties agreed upon a price for additional work, including a second floor loft, an extra window, and a counter with a double sink. The total amount for the "extras" was $1,514.55. Copson wrote appellant a check for $1,000 and agreed to pay the balance with the fourth draw upon completion of the building. Copson testified that he wanted to make sure of any additional expenses, so he asked appellant about "any other extras" or charges. Appellant "told [him] that there was a few things that he had done that normally he would bill for, but he wasn't going to bill [Copson] for them because he was so far behind schedule . . . ."

finish the building. Copson telephoned "several times a week, sometimes every day, ten, twenty times probably." On June 26, 1995, Copson received a letter from appellant demanding that Copson pay the fourth draw and additional money for seventeen listed "extras" before any work could be completed.

On July 1, 1995, Copson responded in writing to appellant's letter. Although he refused to pay the final draw, Copson indicated that he would pay appellant for various "extra" items, as they had previously discussed. Over the next month, the parties "negotiated back and forth," and they eventually reached an agreement. On August 14, 1995, Copson's attorney sent appellant a copy of a proposed agreement to sign and return. Copson never received a response from appellant, and his "phone calls weren't returned." Appellant failed to do any further work or have any of the finishing material delivered.

On October 17, 1996, Copson mailed a certified letter to appellant, return receipt requested. The letter was addressed to East Coast Property & Development, 321 Isle Avenue, Waynesboro, Virginia, 22980, the same name and address printed on the letterhead of the contract signed by the parties. In the first paragraph, Copson gave "notice that [their] contract . . . is canceled." The second and third paragraphs demanded repayment of portions of the first two draws due to incomplete and/or unsatisfactory work. The fourth paragraph addressed the performance of "extra" work. In the fifth paragraph of the

letter, Copson wrote:

> The third draw of $7900 "for all finish work" was advanced to you on May 22 – $3500, May 30 – $2600 and June 2 – $1800.  None of the finishing materials including, but not limited to, insulation, sheetrock, skylights, interior doors, bathroom sink and fixtures, heat pump, flooring, lights and gutters were ever even delivered.  You owe me all this money – $7900.

Four paragraphs later, Copson concluded, "I demand that you pay me the $25,000 you owe me immediately."  The letter was returned to Copson undelivered and unopened.[2]

The evidence also established that approximately two months after appellant "left the job," David Thompson, an Assistant Building Code Official for Nelson County, inspected the uncompleted building.  Thompson indicated in his report that seven items "were incomplete or deficient"; that the building was "still at the rough-in stage"; and that it could not be used or occupied until the wiring and plumbing had been completed and inspected.  As of the September 1997 trial, no additional work had been performed.  James Pace, a contractor, estimated that the cost of completion of the building would be $22,270, not including the cost of a heat pump and plumbing work.

At the conclusion of the presentation of evidence, the trial court took the issue of appellant's guilt under advisement to "look over" the exhibits and "look at the cases."  In his letter

---

[2]We do not address the issue of whether actual receipt of the notice was required as it is not presented in this appeal.

opinion, the trial judge concluded that the evidence "established that at the time [appellant] obtained the third draw he did not intend to complete the finish work required under that draw." Accordingly, the trial court found appellant guilty of failing to carry out a promise to perform construction in return for an advance of money in violation of Code § 18.2-200.1.

## II.

> Code § 18.2-200.1 provides, in pertinent part:
>     If any person obtain from another an advance
>     of money, merchandise or other thing, of
>     value, with fraudulent intent, upon a promise
>     to perform construction . . . of any building
>     or structure permanently annexed to real
>     property . . . and fail or refuse to perform
>     such promise, and also fail to substantially
>     make good such advance, he shall be deemed
>     guilty of the larceny of such money,
>     merchandise or other thing if he fails to
>     return such advance within fifteen days of a
>     request to do so sent by certified mail,
>     return receipt requested, to his last known
>     address or to the address listed in the
>     contract.

Appellant contends that Copson's demand letter dated October 17, 1996 did not meet the requirements of Code § 18.2-200.1. He argues that the letter did not provide adequate notice because it "did not specifically state that the $7900 had to be returned within fifteen (15) days and by including a total demand of $25,000, [the letter] obfuscated the request for the specific return of the $7900." We disagree.

"The main purpose of statutory construction is to determine the intention of the legislature `which, absent constitutional

- 6 -

infirmity, must always prevail.'" <u>Last v. Virginia State Bd. of</u> <u>Med.</u>, 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992) (quoting <u>Board of Supervisors v. King Land Corp.</u>, 238 Va. 97, 103, 380 S.E.2d 895, 897 (1989)).  "Where a statute is unambiguous, the plain meaning is to be accepted without resort to the rules of statutory interpretation."  <u>Id.</u> at 910, 421 S.E.2d at 205. "`Courts are not permitted to rewrite statutes.  This is a legislative function.  The manifest intention of the legislature, clearly disclosed by its language, must be applied.'"  <u>Barr v.</u> <u>Town & Country Properties, Inc.</u>, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting <u>Anderson v. Commonwealth</u>, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)).

When the legislature enacted Code § 18.2-200.1, it plainly intended to prohibit the fraudulent receipt of funds for construction work involving buildings. <u>See</u> <u>Boothe v.</u> <u>Commonwealth</u>, 4 Va. App. 484, 490, 358 S.E.2d 740, 744 (1987).

> We think it clear that the General Assembly meant what it said, <u>i.e.</u>, that a person accused of violating the statute cannot be convicted unless the evidence proves beyond a reasonable doubt, <u>inter alia</u>, that the accused "fail[ed] to return [the] advance within fifteen days of a request to do so," and that the request was "sent by certified mail, return receipt requested."

<u>Jimenez v. Commonwealth</u>, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991).[3]

---

[3]In <u>Jimenez</u>, the Supreme Court considered whether the defendant's "<u>actual notice</u>" of a demand for the return of an advancement of money waived the statutory requirement of written notice by certified mail.  <u>Jimenez</u>, 241 Va. at 251, 402 S.E.2d at

In the present case, Copson did all that the statute required.  He sent appellant a demand letter by certified mail, return receipt requested.  The letter was sent to the address listed in the contract.  He specifically "request[ed]" that appellant return "all" of the $7,900 that "was advanced" "for all finish work."  Copson then listed the three separate payments constituting the "third draw" and the dates each was advanced.  The fact that he demanded additional amounts owed him in the same letter does not vitiate the efficacy of his request for the $7,900 he had already advanced to appellant.  What is important is that appellant was given notice that the third draw, advanced for future work that was not completed, was to be repaid "immediately."  Copson informed appellant that the contract was canceled, and he expressly requested return of the advance.  Neither the statute nor case law requires citation to the specific code section.  Accordingly, we hold the letter sent by Copson complied with the statute and provided valid notice.[4]

---

681 (emphasis added).  Since the victim in that case failed to send by certified mail a written demand, as required by Code § 18.2-200.1, the Court reversed the defendant's conviction.  See id.

In the instant case, Copson sent a written demand by certified mail and appellant failed to return the advance of money within fifteen days.  He complied with the statute.  Whether "actual" receipt of the notice is required under Code § 18.2-200.1 is not before us.  That issue was denied in appellant's petition for appeal, and appellant failed to further pursue that ground.  Accordingly, we do not address it here.

[4]Appellant also contends the language of the statute requires the victim to explicitly ask for the repayment of his advance by using the term, "within fifteen days."  This argument lacks merit.  Appellant could have satisfied his obligation under

- 8 -

III.

Appellant next contends the evidence was insufficient to sustain his conviction. He argues that the Commonwealth failed to show that he acted with fraudulent intent, as required by Code § 18.2-200.1. We disagree.

When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense. See Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997); Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998). We will not reverse the judgment of the trial court, sitting as the finder of fact in a bench trial, unless it is plainly wrong or without evidence to support it. See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

The crime with which appellant was charged contains five elements: (1) obtaining an advance of money from another person;

_____

the statute by making payment within fifteen days of receipt of the demand letter.

(2) a fraudulent intent at the time the advance is obtained; (3) a promise to perform construction or improvement involving real property; (4) a failure to perform the promise; and (5) a failure to return the advance "within fifteen days of a request to do so by certified mail" to the defendant's last known address or the address listed in the contract. Code § 18.2-200.1; see also Jimenez, 241 Va. at 251, 402 S.E.2d at 679; Klink v. Commonwealth, 12 Va. App. 815, 818-19, 407 S.E.2d 5, 7 (1991).

Whether a fraudulent intent existed at the time the advance of money was obtained depends upon the circumstances of the case. See Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986). Appellant's conduct and representations must be examined in order to determine if a fraudulent intent existed at the time. See id. at 519, 346 S.E.2d at 45. "Where a material element of the crime is the fraudulent intent of the accused both the Commonwealth and the accused are allowed broad scope in introducing evidence with even the slightest tendency to establish or negate such intent." Brooks v. Commonwealth, 220 Va. 405, 407, 258 S.E.2d 504, 506 (1979).

In determining whether fraudulent intent exists, the Court must "look to the conduct and representations of the defendant." Norman, 2 Va. App. at 519, 346 S.E.2d at 45. "The use of false statements to induce someone to enter into a contract can be persuasive evidence of fraudulent intent, but the absence of such fraudulent inducement does not preclude a finding that the

- 10 -

defendant later obtained an advance with fraudulent intent."
Rader v. Commonwealth, 15 Va. App. 325, 330, 423 S.E.2d 207, 210
(1992) (citations omitted).

In Rader, we held that the evidence was sufficient to
convict the defendant of a violation of Code § 18.2-200.1.
There, a homeowner contracted with the defendant to build a deck
and add some improvements to the victim's house.  Under the terms
of the contract, the victim was to advance the defendant three
separate draws upon the completion of specific tasks.[5]  While the
homeowner was concerned about giving the defendant the second
advance, the defendant "assured" him that the work would be
completed.  Id. at 329, 423 S.E.2d at 210.  After the victim made
the second advance, the defendant did not complete the work and
failed to order any additional building materials.  See id.

Affirming the defendant's conviction in Rader, we recognized
four significant factors that demonstrated fraudulent intent.

> First, Rader requested the $9,600 upon the
> promise of completing the roof and for the
> specific purpose of ordering windows and
> doors for the new extension.  Rader never
> ordered the windows or doors. . . .  Second,

---

[5]     [The defendant] was advanced $3,125 on the
first day of the job before any work was
begun.  The second payment or draw of $6,500
was to be made when the footers were poured
and blocked and the brick work for the two
additions was started. . . .  The contract
called for the third draw or payment of
$10,000 to be made when the framing was done
in the Florida room and bedroom and when the
roof was on both rooms.

Rader, 15 Va. App. at 326-27, 423 S.E.2d at 208-09.

> Rader falsely told the homeowner that he
> would order the windows with the $9,600
> payment. A defendant's use of false
> statements is a significant factor that tends
> to prove fraudulent intent in construction
> fraud. . . . Third, Rader did not apply for
> a building permit for the deck at the time he
> applied for the other permits. . . .
> Finally, Rader's general lack of
> communication with the homeowners about the
> problems with the project is further evidence
> that he did not intend to complete the
> contract.

Id. at 330-31, 423 S.E.2d at 210-11 (citations omitted).

In the present case, the evidence was sufficient as in Rader to establish beyond a reasonable doubt that appellant violated Code § 18.2-200.1. Appellant's representations and conduct, taken together, demonstrate that he procured the third draw/advance from Copson with the fraudulent intent not to complete the building.

First, appellant requested money for a subsequent third draw before providing material and completing work for the second draw. Significantly, when Copson expressed his hesitation about making the third advance because "the work had gone so slowly," appellant represented that the advance was needed "to get the finishing materials," "to keep things going," to "continue working," and to "pay his workers." Similar to Rader, the fact finder could have determined that these representations were falsely made and intended to defraud the victim. See id. at 330, 423 S.E.2d at 211.

Next, the evidence established that within a week of Copson

- 12 -

paying the balance of the third draw, appellant and his workers "packed up all . . . their tools and left the job." While appellant had ordered and delivered a toilet bowl, he did not deliver the sinks, heat pump, skylights, electrical lighting, sheetrock, gutters, linoleum flooring, interior window frames, and insulation. Like Rader, "[t]his conduct was a factor from which the fact finder could have inferred fraudulent intent in construction fraud." Id.

Finally, after appellant left the job site, Copson attempted on numerous occasions to contact him to determine when work on the project was going to resume and be completed. Copson telephoned appellant "several times a week, sometimes every day." As we recognized in Rader, the "general lack of communication with the homeowners about the problems with the project is further evidence that he did not intend to complete the contract." Id.

Under the circumstances of this case, we hold that the Commonwealth's evidence sufficiently established that appellant possessed the required fraudulent intent. Although appellant denied any intent to defraud the victim, the fact finder was not required to believe him or to give any weight to his testimony. See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to

conceal his guilt.").  The trial court was not plainly wrong when it concluded that appellant had no intention of completing the building when he received the third draw from Copson.

Boothe v. Commonwealth, 4 Va. App. 484, 358 S.E.2d 740 (1987), relied on by appellant, is distinguishable from this case.  We held in Boothe that the evidence was insufficient to prove that the defendant, at the time he contracted with the victim, acted with fraudulent intent.  See id. at 492, 358 S.E.2d at 745.  Appellant argues that like the contractor in Boothe, the evidence was purely circumstantial and did not provide sufficient proof of intent to defraud at the time Copson paid the third draw.  We disagree.

Unlike the situation in Boothe, appellant had promised a definite completion date, February 28, 1995, which he did not satisfy.  Additionally, appellant completely abandoned the project and his workers walked off the job site; in Boothe the defendant was unable to complete the job because of "bad weather, his father's fatal illness" and circumstances involving an unrelated criminal matter.  Id. at 487, 358 S.E.2d at 742. Finally, Copson's third advance was for a particular purpose, i.e., to complete "all finish work."  Appellant made specific representations to Copson that the advance was needed to purchase finishing materials and to continue the work.  The contract in Boothe provided for "full payment in advance," and as we noted in that decision, "Boothe was not prevented by the contract from

cashing Mason's checks and immediately spending the money for any purpose he wished, including satisfaction of supplier and personal bills."  Id. at 492, 358 S.E.2d at 745 (emphasis added).

In the present case, the Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of construction fraud in violation of Code § 18.2–200.1. Accordingly, we affirm appellant's conviction.

Affirmed.