COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judge Annunziata and
         Senior Judge Overton
Argued at Chesapeake, Virginia


KADER MUSTAFA MUGHRABI, S/K/A
 KHADER MUSTAFA MUGHRABI
                                        OPINION BY
v.   Record No. 1946-01-1   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        AUGUST 6, 2002
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF YORK COUNTY
                  N. Prentis Smiley, Jr., Judge

          Charles E. Haden (G. Curtis Overman, Jr., on
          brief), for appellant.

          Donald E. Jeffrey, III, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Kader Mustafa Mughrabi (appellant) appeals his bench trial

conviction of two counts of construction fraud in violation of

Code § 18.2-200.1.  On appeal, he contends the trial court erred

in (1) allowing testimony about prior unadjudicated "bad acts,"

and (2) denying a motion to strike and motion to set aside the

convictions because the Commonwealth failed to prove appellant

intended to defraud the victims.  For the following reasons, we

affirm.

## I.  BACKGROUND

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that on August 2, 1999, Paula Johnson and her husband, Rubert Johnson, Jr. (the Johnsons) entered into a construction contract with appellant for work on their house.  At the time the contract was negotiated, appellant told the Johnsons he had nine crews working for him.  The Johnsons gave him an advance of $1,000 to pay for a patio door that appellant claimed had to be ordered and would be delivered in about four weeks.  The project was supposed to start upon receipt of the door, which was never delivered.

Mrs. Johnson did not hear from appellant for over a month and called him numerous times about his failure to do the work. She called his business and cell phone numbers, but appellant did not return her calls.  On September 10, 1999, appellant called and told her he had been delayed because of the weather, but work would begin on Tuesday or Wednesday of the next week. However, he failed to appear on those days.  Mrs. Johnson continued to call appellant on his home and business phones, but

a few weeks later, the business phone was disconnected. On October 17, 1999, appellant called the Johnsons and told them that Scott Fuller (Fuller) would contact them concerning the job. Fuller arrived but did not have the door and did not begin work. The Johnsons sent a certified letter to appellant demanding their money be returned. Appellant promised to give the advance back but failed to do so.

Linda Ware (Ware) testified that on August 5, 1999, she and her fiancée, Fred Dylla (Dylla), entered into a construction contract with appellant to have a porch built on their house. The parties agreed on a starting date of September 7, 1999. Appellant also told Ware that he had several crews working for him. Ware and Dylla gave him a check for $1,350 because appellant said he needed it "as good faith" and to purchase building supplies to start the porch.

Due to bad weather, appellant did not begin work on the porch on September 7 but told Ware he would start the job September 14. However, no supplies arrived, and appellant did not begin work on that date. When Ware called, appellant said the work would begin September 23. However, he did not begin work on that date either, and Ware's later phone calls to him were not returned. Richard Elias, a subcontractor, stated that he went with appellant to the Ware house to consider doing the work, but declined the job. Ware was unable to get a response

from appellant about the work delays and sent two certified letters to him requesting a return of the advance, but appellant never returned the money.

Robert Pritchard (Pritchard), a state investigator for the Department of Professional Occupational Regulations, testified that in June 1999, two months before appellant entered into the Johnson and Ware contracts, he met with appellant concerning ten to twelve complaints against Gada Enterprises, appellant's business.

Pritchard stated that:

> [O]n or about June the 30th, 1999, I interviewed [appellant], and we discussed the requirements of the Board for Contractors for those nine elements that should be – as [sic] a minimum should be in the contract. As I recall, [appellant] was not familiar with the regs [sic] at that time, but I did bring it to his attention those requirements, especially the fact of the start date and estimated completion date.

Appellant objected when the Commonwealth questioned Pritchard about whether he discussed with appellant the regulation dealing with the return of advances for work not started or completed. The trial court allowed Pritchard to testify, stating, "I think it's proper to establish the history of action in that regard because it shows knowledge and intent." Pritchard stated:

The issue that I discussed with [appellant] dealt with funds not returned to customers. And I asked [appellant] why the funds were not being returned to customers, because he couldn't provide the materials or products or didn't perform the labor, and his response to me was that it was a cash flow issue, that he could not return the funds at this time because it would affect his business. I asked him if he had sufficient funds available to return the funds that I was discussing with him. He indicated he had seven thousand dollars in his checking account, forty thousand dollars in assets in his firm.

And I again phrased the question, "If you have the assets or the funds, why don't you return those to the people who are due those?" [Appellant] again said that it would affect his business, affect his cash flow and he was not going to do it until he could safely do it to protect his business.

Victoria Carney, appellant's marketing manager, testified that appellant was having cash flow problems in July 1999 and was unable to complete ongoing projects. He continued to accept new contracts and deposits in August 1999 even though he was two months behind in his work.

Appellant testified that he did not intend to defraud the Johnsons, Ware and Dylla. He stated that he was delayed by inclement weather and a heart attack but intended to complete the projects. Appellant also admitted he was running two to three weeks behind on his contracts and that he had not paid himself a salary in four months.

## II.  PRIOR "BAD ACTS" TESTIMONY

Appellant first contends the trial court erred by allowing Pritchard, the Department of Professional Occupational Regulations' investigator, to testify that he spoke to appellant in June 1999 about his failure to return other advance payments, to timely begin and complete projects, and other regulatory violations.  He argues that this evidence of "prior bad acts" should have been excluded.  We disagree.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citing Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)).  "A trial court 'by definition abuses its discretion when it makes an error of law.'"  Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).

"Generally, evidence of other offenses is inadmissible if it is offered merely to show that an accused was likely to commit the crime for which he is being tried.  There are, however, well-established exceptions to the general rule." Cheng v. Commonwealth, 240 Va. 26, 34, 393 S.E.2d 599, 603 (1990).  "The exceptions to the general rule are numerous, and evidence of other crimes or other bad acts is admissible when

relevant to prove a material fact or element of the offense." Jennings v. Commonwealth, 20 Va. App. 9, 15, 454 S.E.2d 752, 755 (1995) (citing Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)).

> Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial.

Id. at 34, 393 S.E.2d at 603 (quoting Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805). "In order for evidence that the accused has committed other crimes to be admissible, it need only be relevant to prove a material fact or issue, and its relevance must outweigh the prejudice inherent in proving that an accused has committed other crimes." Wilson v. Commonwealth, 16 Va. App. 213, 220, 429 S.E.2d 229, 234 (1993) (citing Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 616 (1990)).

"'Where a material element of the crime is the fraudulent intent of the accused both the Commonwealth and the accused are allowed broad scope in introducing evidence with even the slightest tendency to establish or negate such intent.'" Brooks v. Commonwealth, 220 Va. 405, 407, 258 S.E.2d 504, 506 (1979)

(quoting Bourgeois v. Commonwealth, 217 Va. 268, 273, 227 S.E.2d 714, 718 (1976)).

In the instant case, Pritchard's testimony that he had discussed with the appellant, only two months before the contracts at issue, his failure to return advanced funds or complete contractual obligations to at least ten others is clearly probative of appellant's state of mind and intent to defraud the Johnsons, Ware and Dylla at the time he entered into contracts with them. Appellant continued to enter construction contracts with no specific start or end dates, took deposits for items never delivered and failed to commence work. Pritchard's testimony established that appellant had cash flow problems as early as June 1999 but continued to follow the same pattern of entering into contracts, retaining deposits and failing to complete the work.

"Nevertheless, evidence of other crimes is permitted only when 'the legitimate probative value outweighs the incidental prejudice to the accused.'" Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 381 (1988) (quoting Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983)). The evidence that appellant perpetrated more than one fraud about the same time is relevant to show his fraudulent intent. See Hubbard v. Commonwealth, 201 Va. 61, 67, 109 S.E.2d 100, 105 (1959). The evidence outlined above was highly probative of his

intent at the time the instant contracts were signed. Consequently, any incidental prejudice inherent in the evidence of the prior "bad acts" was outweighed by its probative value. Thus, the trial court did not abuse its discretion by allowing Pritchard to present evidence that was probative of appellant's fraudulent intent.

### III. INTENT TO DEFRAUD

Appellant next argues that the Commonwealth's evidence was insufficient to prove he had the requisite intent to defraud at the time the contracts were made. Appellant maintains the Commonwealth's evidence merely shows that he failed to complete the jobs on time and failed to return phone calls. Further, appellant argues that he had credible explanations for the delays because of the inclement weather and his heart attack. We disagree.

In reviewing sufficiency of the evidence, "'the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict.'" Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991) (quoting Evans v. Commonwealth, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975)). "[T]he trial court's judgment will not be set aside unless plainly wrong or without evidence to support it." Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999).

"Circumstantial evidence 'is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Taylor v. Commonwealth, 33 Va. App. 735, 737, 536 S.E.2d 922, 923 (2000) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)). "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993) (internal citations omitted).

The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt. See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (citing Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc)).

Code § 18.2-200.1 provides, in pertinent part:

> If any person obtain from another an advance of money, merchandise or other thing, of value, with fraudulent intent, upon a

promise to perform construction, removal, repair or improvement of any building . . . and also fail to substantially make good such advance, he shall be deemed guilty of the larceny of such money, merchandise or other thing if he fails to return such advance within fifteen days of a request to do so sent by certified mail, return receipt requested, to his last known address or to the address listed in the contract.

"To determine whether fraudulent intent exists, the Court must 'look to the conduct and representations of the defendant.'" Rader v. Commonwealth, 15 Va. App. 325, 329, 423 S.E.2d 207, 210 (1992) (quoting Norman v. Commonwealth, 2 Va. App. 518, 519, 346 S.E.2d 44, 45 (1986)). "A defendant's use of false statements is a significant factor that tends to prove fraudulent intent in construction fraud." Id. at 330, 423 S.E.2d at 211. "The time for determining fraudulent intent is the time at which the defendant procured the advance." Id. at 329, 423 S.E.2d at 210.

In the instant case, the evidence established that appellant continued a pattern of entering into contracts with prospective clients in which he demanded advances for supplies that were never purchased. He made false statements to both victims that he had several "crews" working for him at a time when he was experiencing severe cash flow problems. He failed to begin or complete any work on the contracts, avoided contact with the victims, and refused to return their deposits when

requested.  His dealings with the Johnsons, Ware and Dylla were not isolated instances, but rather were consistent with his recent conduct with ten to twelve other homeowners, as established by Pritchard.  Appellant's conduct and representations sufficiently prove the requisite fraudulent intent at the time the contracts were executed.

For the foregoing reasons, we affirm.

Affirmed.