COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and Senior Judge Coleman
Argued at Richmond, Virginia


CHARLES C. PITTS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0277-07-2                      JUDGE SAM W. COLEMAN III
                                                         FEBRUARY 19, 2008

COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
                              Ernest P. Gates, Judge Designate

                  William E. Moore, Jr. (Moore & Moore, on brief), for appellant.

                  Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
                  Attorney General, on brief), for appellee.


        Charles C. Pitts was tried without a jury and convicted of construction fraud in violation of

Code § 18.2-200.1.  The Question Presented as framed by Pitts for which we granted an appeal is

whether the assumption of a "pre-existing debt" is sufficient to constitute "an advance for the

purposes of Code § 18.2-200.1."[1]  The underlying construction agreement that gave rise to the

------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Code § 18.2-200.1 provides:

          If any person obtain from another an advance of money,
          merchandise or other thing, of value, with fraudulent intent, upon a
          promise to perform construction, removal, repair or improvement
          of any building or structure permanently annexed to real property,
          or any other improvements to such real property, including
          horticulture, nursery or forest products, and fail or refuse to
          perform such promise, and also fail to substantially make good
          such advance, he shall be deemed guilty of the larceny of such
          money, merchandise or other thing if he fails to return such
          advance within fifteen days of a request to do so sent by certified
          mail, return receipt requested, to his last known address or to the
          address listed in the contract.

question began when Pitts entered into a contract on behalf of himself and his partner, d/b/a A & P Remodeling, to replace the homeowners' siding for which Pitts received an advance by check of $11,032.14, ostensibly for the cost of materials. After Pitts and his partner purportedly severed their partnership relation, Pitts contracted with the homeowners to assume the contractual obligations and to complete the job and "give them credit" for the advance under the prior contract. Although Pitts admittedly then failed to complete the construction, he argues that the consideration for the "second contract" was the "assumption of a pre-existing debt" and because there was no "advance" of new money, an essential element of construction fraud under Code § 18.2-200.1 was not proven. Assuming that Pitts is correct in his assertion that the consideration for his individual agreement was based solely upon his "assumption of a debt" which did not constitute an "advance" of funds, a proposition which we do not concede except for resolution of the issues before us, nevertheless, we must still consider and determine whether the evidence, viewed in the light most favorable to the Commonwealth and considering the entire record, proved that Pitts acted with fraudulent intent when he received the initial or a subsequent advance. Finding the evidence sufficient on that basis, we affirm the trial court's judgment.

## I. Facts

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). As noted, even if we accept Pitts's argument that no "advance" occurred when he obligated himself under the second contract to "assume the pre-existing debt"

- 2 -

from the first contract, nevertheless, we must consider whether the evidence is sufficient to prove, in the absence of a contrary factual finding by the trial judge, that Pitts acted with fraudulent intent when he received the initial advance and/or the subsequent advance by check of $2,800 payable to the materials supplier.

> When [reviewing] . . . on appeal the sufficiency of the evidence to sustain . . . [a criminal] conviction, the appellate court has a duty to examine all the evidence that tends to support the conviction. Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005); Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998); Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998) . . . . [T]his examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling. . . . [A]n appellate court must consider all the evidence admitted at trial that is contained in the record.

Bolden v. Commonwealth, ___ Va. ___, ___, 654 S.E.2d 584, ___ (2008).

So viewed, the evidence established that Laurence and Gail Pease contracted with Pitts and his partner, conducting business as A & P Remodeling, to replace the siding on their home. On September 12, 2005, Gail Pease signed the contract for the work and wrote a check payable to A & P Remodeling for $11,032.14, the cost of the materials, and gave it to Pitts. This check was number 125 from the Peases' SunTrust account. Pitts and Laurence Pease initialed the notation made on the contract that the cost of the materials had been paid by "Suntrust check #125." The next day, Pitts endorsed this check and deposited it in "the account of A & P Remodeling."

On September 28, 2005, Pitts returned to the Peases' home and informed them that A & P Remodeling had "broken up." No materials had been delivered, and no work had yet been done on the Peases' job. However, Pitts represented that he would do their work and the Peases signed another contract with Pitts, who was now conducting business as Pitts Remodeling. Pitts told them the first check they had written would be "credited" and would be applied towards the needed materials for the job. This second contract with Pitts states, "Materials will be paid

- 3 -

upfront 11,032.14." A notation was made on the top of this new contract stating, "Paid material Check #125." Pitts and Laurence Pease initialed this notation. This contract also stated that the cost of the labor to do the work was $8,400 which was payable in "3 installments of $2,800." Pitts also wrote a note to the Peases asking them to "dispose of [the] old contract" and informing them that his former business partner should not receive any of the new paperwork regarding the Peases' job.

On October 11, 2005, Pitts returned to the Peases' home to get a "check for $2,800, which was supposed to be the first installment on the work, which he said he was going to start, but the materials had not yet been delivered." Pitts said he needed the $2,800 to pay for the truck to deliver the supplies. Gail Pease spoke to a woman at the building supply company to confirm that the materials for her job were there, and learned that "they needed the money . . . before they would release the materials" because the materials had "never been paid for." Gail Pease gave Pitts the check for $2,800 but made it payable to the materials supply company, LYFTYM Building Products. The next day, Pitts and two workers arrived at the Peases' home with a Ryder rental truck loaded with supplies. They unloaded the supplies. Pitts left to return the rental truck while the two workers remained on the premises working. Pitts never returned that day. Pitts worked on the Peases' home twice between October 13, 2005 and November 1, 2005, but did nothing but apply an insulating layer on top of the original siding. After November 1, 2005, Pitts never returned to the Peases' home. The Peases unsuccessfully attempted to contact Pitts by telephone. On November 16, 2005, they sent a certified letter to Pitts requesting that he return to them $11,032.14, but the letter was returned unclaimed. In that letter, the Peases stated that it appeared to them that only the subsequent check for $2,800 was used to purchase the materials that were on their property.

II. Analysis

Code § 18.2-200.1 provides that a person is guilty of construction fraud if he obtains an advance of money or other thing of value with fraudulent intent upon a promise to perform construction and fails to perform that promise. The elements of construction fraud are (1) obtaining an advance of money, (2) a fraudulent intent at the time the advance is obtained, (3) a promise to perform construction or improvement, (4) a failure to perform, and (5) a failure to return the advance within fifteen days of a request to do so by certified mail. Klink v. Commonwealth, 12 Va. App. 815, 818, 407 S.E.2d 5, 7 (1991). "The time for determining fraudulent intent is the time at which the defendant procured the advance." Rader v. Commonwealth, 15 Va. App. 325, 329, 423 S.E.2d 207, 210 (1992). "A defendant's use of false statements is a significant factor that tends to prove fraudulent intent in construction fraud." Id. at 330, 423 S.E.2d at 211. "'Intent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence.'" Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995) (quoting Wright v. Commonwealth, 245 Va. 177, 193, 427 S.E.2d 379, 390 (1993)).

The Peases entered into the initial contract with Pitts, and because the contract required them to pay for the materials "upfront," they gave him a check for $11,032.14. A notation, initialed by Pitts and Laurence Pease, was made on top of this contract stating, "Paid Material money Suntrust check #125." More than two weeks passed and no materials had been delivered and no work had been done at the Peases' home. The Peases entered into the second contract with Pitts upon Pitts's representation that they would be given credit for the $11,032.14 check they previously paid for materials pursuant to the first contract.

Pitts's characterization on appeal of the second contract as an assumption of "debt" does not negate the fact that Pitts had earlier taken the money and failed to purchase materials or

- 5 -

begin the work, factors indicative of Pitts's fraudulent intent when he entered into the initial contract with the Peases. The fact that there were two contracts does not require that we view each contract or transaction separately to determine whether each would independently prove construction fraud, as appellant's approach would have us do. The question is whether Pitts's conduct throughout the construction project constituted fraud on his part. Based upon the first contract on behalf of A & P, of which Pitts was a partner, Pitts obtained an advance of $11,032.14 that was never used for any significant amount of materials or labor or returned to the Peases. The second contract states that the costs of the materials, $11,032.14, "will be paid upfront." On the top of the contract, Pitts wrote "Paid material check #125" and then he and Laurence Pease initialed this notation. By his actions, Pitts obtained an advance of money for the materials to do the work for the Peases. Pitts's representation that he was accepting the $11,032.14 check as payment "upfront" for the materials was a misrepresentation that caused the Peases to enter into the second contract with Pitts. Pitts entered into the second contract knowing he had been advanced the money and did not then have the money to buy the materials and complete the work. These facts are sufficient to prove Pitts's fraudulent intent. See Mughrabi v. Commonwealth, 38 Va. App. 538, 548, 567 S.E.2d 542, 547 (2002) (fraudulent intent is established when contractor receives an advance for supplies that were never purchased).

Also, Pitts's fraudulent intent was further evidenced by his representation that he needed an additional $2,800 to pay for the truck to transport the building supplies. While the evidence proved that the check was written directly to the building supply company and that Pitts used this additional money to buy materials, he had requested that Gail Pease write the check to him. Although Pitts had represented to the Peases that the materials had been paid for, the Peases determined that this representation was false. Pitts worked on the job only two days, and never

- 6 -

returned, and could not be reached by telephone or certified mail. Pitts's lack of communication with the Peases is further evidence that he never intended to complete the contract. See Norman v. Commonwealth, 2 Va. App. 518, 521, 346 S.E.2d 44, 46 (1986) (defendant's failure to contact client to tell him that financial problems prevented him from fulfilling contract is indicative of fraudulent intent).

For these reasons, the evidence was sufficient to prove beyond a reasonable doubt that Pitts received an "advance," that he procured the advance with a fraudulent promise, and that he failed to make good on the promise. We affirm the trial court's judgment.

Affirmed.