COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Frank and Humphreys
Argued at Salem, Virginia


TEDDY O. LAWLESS, S/K/A
 TEDDY ODELL LAWLESS
                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1787-04-3                          JUDGE ROBERT P. FRANK
                                                          DECEMBER 20, 2005
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF PATRICK COUNTY
                          Martin F. Clark, Jr., Judge

        Joseph R. Winston, Special Appellate Counsel (Virginia Indigent
        Defense Commission, on briefs), for appellant.

        Denise C. Anderson, Assistant Attorney General (Judith Williams
        Jagdmann, Attorney General, on brief), for appellee.


        Teddy O. Lawless, appellant, was convicted, in a bench trial, of feloniously storing,

dumping, littering, disposing of, speculatively accumulating or otherwise placing five hundred (500)

or more waste tires upon his property, without first having obtained a permit, in violation of Code

§ 10.1-1418.2(C). On appeal, appellant argues the trial court erred in finding the evidence sufficient

to prove he continued to deposit tires on the property. Appellant also claims it was unfair for the

Commonwealth to charge appellant with a criminal violation when he was complying with a civil

consent order to dispose of the tires. For the reasons stated, we affirm the conviction.

                                    BACKGROUND

        In May 1994, Rebecca Wright of the Virginia Department of Environmental Quality (DEQ)

spoke with appellant regarding tires that he was illegally storing on his property. Ms. Wright

--------

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

personally advised appellant of the maximum number of tires he was permitted to store in accordance with the law. Further, she explained to appellant that the law required him to obtain a permit in order to store the tires. Twice in 1996, DEQ issued written violations to appellant advising him he was illegally storing tires.

On January 15, 1997, Ms. Wright visited appellant's property and noted that there were three hundred (300) tires at the site. On October 29, 1999, Ms. Wright again visited appellant's property concerning the clean-up of his waste tire site. During her visit, Ms. Wright saw several piles of tires and trucks filled with tires that were not there during her 1997 visit. She characterized the increase as "substantial." Appellant admitted he was still bringing tires onto his property to store temporarily until he could take them to a location for proper disposal.

Ms. Wright issued another notice of non-compliance for "the improper storage and disposal of waste tires" and for doing so without obtaining a permit. The notice required appellant to remove all of the tires by November 19, 1999. Ms. Wright returned on December 14, 1999, and was satisfied with appellant's progress.

Ms. Wright returned to appellant's property on May 9, 2000 and issued a notice of violation for the improper disposal of tires. She continued to make periodic inspections. On June 27, 2000, she discovered approximately fifteen thousand (15,000) tires on appellant's property. Appellant indicated he was going to use the tires to build a privacy fence on his property.

Ms. Wright spoke to appellant by telephone on November 30, 2000. Appellant indicated he would need three (3) months to have the site cleaned. On January 29, 2001, Jerry R. Ford, Jr., an enforcement agent with DEQ, issued appellant another notice of violation.

By June 5, 2001, appellant had still not complied with the oral agreement he had made with DEQ. Consequently, he entered into a written consent order with Mr. Ford whereby he agreed to remove three thousand seven hundred and fifty (3,750) tires per quarter, and further agreed that all

the tires would be removed from the property by April 30, 2002. The consent order specifically stated that "Mr. Lawless shall not place any additional waste tires at the . . . property or any other site within the Commonwealth."

On June 21, 2001, an inspection of the property revealed an estimated twenty thousand five hundred (20,500) tires on the premises. In April 2002, shortly before the deadline was about to expire, appellant requested that DEQ allow him to amend the consent order. DEQ agreed to amend the consent order to require removal of five thousand (5,000) tires quarterly. The consent order extended the deadline for total removal of the tires by one year, requiring that all the tires be removed by April 30, 2003. The original provision mandating that no additional tires shall be brought upon the property remained in effect.

DEQ made additional site inspections and noted appellant had removed a number of the tires. In April 2003, shortly before the expiration of the new deadline, appellant asked for another deadline extension. Appellant and DEQ signed a third consent order extending the deadline for compliance until April 2004, but this order was never adopted by the Virginia Waste Management Board.

On May 30, 2003, Investigator Bruce Pendleton visited appellant's property. Appellant admitted to Pendleton that he had approximately forty thousand (40,000) tires located in various places on his property.

At trial, appellant testified that he had approximately forty thousand (40,000) waste tires stored on his property on May 30, 2003. He also admitted he did not have a permit for the tires as required by statute. Finally, appellant testified that he knew he was not allowed to store more than one hundred tires on his property without a permit, but denied placing additional tires on the property. He explained that the actual number of tires never increased. Instead, DEQ's figures increased as their estimates became more accurate.

The trial court, in finding appellant guilty, concluded that appellant knew since 1994 that he was in violation of the statute. Nevertheless, he increased his tire storage without a permit from one hundred fifty (150) tires in 1994 to forty thousand (40,000) tires on May 30, 2003, the date of the indictment.

This appeal follows.

## ANALYSIS

Appellant first contends the evidence does not support the trial court's finding that he continued to deposit additional waste tires on the property. Essentially, appellant maintains the evidence was not sufficient to convict.[1] The Commonwealth replies that pursuant to Code § 10.1-1418.2(B), there is no requirement the offender continue to deposit waste tires on the property, only that he stored five hundred (500) or more waste tires without a permit.[2] We agree with the Commonwealth.

---

[1] Code § 10.1-1418.2 provides in relevant part:

> B. It shall be unlawful for any person to store, dispose of, speculatively accumulate or otherwise place more than 100 waste tires on public or private property, without first having obtained a permit as required by § 10.1-1408.1 or in a manner inconsistent with any local ordinance. No person shall allow others to store, dispose of, speculatively accumulate or otherwise place on his property more than 100 waste tires, without first having obtained a permit as required by § 10.1-1408.1.
>
> C. Any person who knowingly violates any provision of this section shall be guilty of a Class 1 misdemeanor. However, any person who knowingly violates any provision of this section and such violation involves 500 or more waste tires shall be guilty of a Class 6 felony.

[2] Appellant conceded at trial that he stored more than five hundred (500) waste tires without a permit and that none of the exceptions to Code § 10.1-1418.2 applied to his tires or property.

When considering the sufficiency of the evidence on appeal in a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). "In so doing, we must 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Corbin v. Commonwealth, 44 Va. App. 196, 202, 604 S.E.2d 111, 114 (2004) (quoting Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986)). The trial court's judgment will not be set aside unless the judgment is plainly wrong or without evidence to support it. Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (*en banc*).

We are further mindful that "[t]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Crawley v. Commonwealth, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999). We will not disturb the conviction unless it is plainly wrong or unsupported by the evidence. Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

The evidence is uncontroverted that on May 30, 2003, the date of the offense, appellant had over five hundred (500) waste tires on his property without having a permit as required by Code § 10.1-1418.2. Moreover, the trial court found that appellant continued to deposit additional tires on the property.

In 1999, appellant had one hundred fifty (150) waste tires on his property. The number steadily increased until May 30, 2003, when appellant admitted the number was forty thousand (40,000). The trial court rejected appellant's testimony that he never deposited additional tires on his property and that the increase in number was due to an upward revision as DEQ's estimates became more accurate. Granted, DEQ never counted each tire individually and they based their

figures on estimates. However, the trial court accepted the accuracy of DEQ's estimates, noting appellant never objected to the estimate testimony.

Appellant also maintains that since the consent order allowed him to keep the excessive number of waste tires as long as he was removing them in accordance with the consent order, it was unfair for the Commonwealth to prosecute him. Put differently, appellant argues that the Commonwealth, through its agency DEQ, permitted appellant to continue to store the tires without a permit, while another agency, the Commonwealth's Attorney for Patrick County, prosecuted him for conduct sanctioned by DEQ. Appellant is correct in stating the due process theory.

> In Miller [v. Commonwealth, 25 Va. App. 727, 492 S.E.2d 482 (1997)], we reversed and dismissed Miller's conviction under Code § 18.2-308.2, because the Due Process Clause barred his conviction for possessing a muzzle-loading rifle after having been convicted of a felony, where his probation officer advised him that he was legally permitted to possess the firearm. Id. at 742-45, 492 S.E.2d at 490-91. We stated the "essence" of the due process argument as follows: "'[T]hat the criminal statute under which the defendant is being prosecuted cannot constitutionally be applied to the defendant without violating due process of law, where government officials have misled the defendant into believing that his conduct was not prohibited.'" Id. at 736, 492 S.E.2d at 487.

Branch v. Commonwealth, 42 Va. App. 665, 670, 593 S.E.2d 835, 837 (2004) (other citation omitted).

Yet, we need not address this due process issue because appellant's argument is based on an erroneous proposition, i.e., that he was in compliance with the consent order. He was not. As part of the original consent order, which remained in effect throughout the several amendments, "Mr. Lawless shall not place any additional waste tires at the Fayerdale property or any other site within the Commonwealth." Thus, appellant was not in compliance with the consent order. It follows that he had no basis to believe his conduct was acceptable to DEQ, nor that his conduct was lawful. See id. at 671, 593 S.E.2d at 837 (holding that the due process defense is available to a defendant where he proves, among other things, that based upon the totality of the

- 6 -

circumstances, his reliance upon the advice of the government official was reasonable and in good faith).

Finding no error, we affirm the conviction.

Affirmed.